IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

TERI C. MULLINS                                                                      PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:05cv456-DPJ-JCS

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY                                                                DEFENDANT

### REPORT AND RECOMMENDATION

Plaintiff brought this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration.  Presently before the court is Plaintiff's motion for judgment on the pleadings and Defendant's motion to affirm the Commissioner's decision.  Having considered the motion, Defendant's response, Plaintiff's rebuttal, and the administrative record, the undersigned recommends that Plaintiff's motion be denied and that Defendant's motion be granted.

### I. Procedural History and Administrative Record

Plaintiff filed for a period of disability and disability insurance benefits under Title II of the Social Security Act with a protective filing date of July 18, 2001.  She alleges disability beginning February 1, 2001 due to seizures, a skin disorder, and anxiety.  Her application was denied by the Social Security Administration (SSA) both initially and on reconsideration.  Following a hearing on October 21, 2003, the Administrative Law Judge (ALJ) issued a decision on October 30, 2003, finding that Plaintiff was not disabled. Plaintiff sought review by the Appeals Council, which was denied.  Plaintiff then brought

this appeal pursuant to section 205(g) of the Social Security Act.

Plaintiff was born on August 31, 1977. She completed high school and two years of college. Her past relevant work experience consists of employment as an accounts payable clerk, outpatient admissions clerk, and data entry clerk. Her medical records indicate a long history (since she was fifteen years old) of generalized and partial seizures, for which she has been treated by Dr. Larry Parker, who has prescribed Tegretol, Tegretol XR and Lamictal to control her seizures. Dr. Parker has also prescribed Klonopin for anxiety and stress and to help with seizure control. In a letter written in support of Plaintiff's disability application and dated April 23, 2002, Dr. Parker stated that Plaintiff continued to have occasional generalize seizures once every month to month-and-a-half and that she had partial seizures occurring once or several times a day. Dr. Parker further stated that Plaintiff's epilepsy was permanent and difficult to control and that she should be considered permanently disabled.

The records also reveal surgical excision in 1999 of vaginal and vulvar condylomata. In January of 2001 she was seen by Dr. Mercer Lee for complaints of hidradenitis.[1] Dr. Lee noted that she had healing furuncles in the breast area and scars from previous furuncles in the pelvic area and inner thighs.[2] Dr. Lee prescribed topical medication. She returned on July 31, 2001, at which time he renewed her medication.

---

[1] Hidradenitis is an inflammation of the sweat gland. *See Dorland's Illustrated Medical Dictionary*, W.B. Saunders & Co. (30th ed. 2003) at 832.

[2] A furuncle is a painful skin nodule, consisting of inflammation of subcutaneous tissue, cause by staphylococcic infection of the hair follicle; it is also known as a boil. *Dorlands* at 745.

2

On September 13, 2001 Dr. Glenn James, the consultative physician for Disability Determination Services, reviewed Plaintiff's file and completed a Physical Residual Functional Capacity Assessment. Dr. James assessed no exertional limitations and indicated that she should never climb or balance and should avoid commercial driving.

At her hearing, Plaintiff testified that she has at least one, sometimes two grand mal seizures per month and frequent small seizures which can range from two or three per day to two or three per week. After a grand mal seizure, she suffers from a migraine headache, fatigue, and short term memory loss. Often it takes her at least a day after a grand mal seizure in which to return to normal functioning. Plaintiff lives with her son, who at the time of the hearing was four years old, and she spends most of her day taking care of him. She performs routine housework but does not cook unless someone else is present. She drives very little. Plaintiff testified that she had problems with anxiety "just every now and then" and that her anxiety was "not real bad."

Also testifying at the hearing was Brenda Dumas, a vocational expert (VE). Ms. Dumas classified Plaintiff's past relevant work as an admissions clerk, data entry clerk, and accounting clerk as semiskilled sedentary work. The ALJ questioned the VE about a hypothetical person with the following characteristics: The same vocational profile as Plaintiff, having no exertional limitations, limited to jobs where she is not exposed to dangerous heights, moving equipment, open flames, and bodies of water, not required to drive a motor vehicle, unable to balance except as required for sitting, standing and walking, and unable to climb. The VE testified that such a person could perform all of

Plaintiff's past relevant work.[3]

---

[3]The VE also testified in response to two other hypotheticals.  In one, the ALJ added to the first hypothetical a limitation of no more than a moderate amount of workplace stress.  According to the VE, such a person could still perform all of Plaintiff's past relevant work.   The VE also testified that if such a person were consistently absent from work more than once per month, she would be unable to perform Plaintiff's past relevant work or any work.

## II.  **The Decision of the ALJ**

In considering Plaintiff's claim, the ALJ found that Plaintiff was not engaged in substantial gainful activity.[4]  The ALJ determined that Plaintiff suffers from the severe impairment of a seizure disorder with postictal migraine headaches but that she does not suffer from a listed impairment or an impairment or combination of impairments medically equal to a listed impairment.  The ALJ then went on to find that Plaintiff has the residual functional capacity to perform work that does not require her to balance (other than as required for sitting, standing and walking) or to climb and that does not require exposure to dangerous heights, moving equipment, open flame or bodies of water and that does

---

[4]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)  whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)  whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3)  whether the impairment is listed, or equivalent to an impairment listed, in appendix I of the regulations (if so, then the claimant is found to be disabled);

(4)  whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)  whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, then claimant is found to be disabled).

*Leggett v. Chater*, 67 F.3d 558, 564 n.2 (5th Cir. 1995).  The analysis ends at the point at which a finding of disability or non-disability is required.  In the present case, the ALJ made a finding of non-disability at step four of the process.

5

not require her to drive a motor vehicle.  Relying upon the testimony of the VE, the ALJ concluded that Plaintiff was capable of performing her past relevant work and that therefore she is not disabled.

### III.  Analysis

In reviewing the Commissioner's factual findings, this court's task is not to determine the ultimate question of whether Plaintiff was disabled during the period at issue.  Rather, this court  is "limited to a determination that the [Commissioner's] decision was supported by substantial evidence existing on the record as a whole and that no errors of law were made."  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987)).[5]   In support of her motion, Plaintiff makes three arguments:   (1) That the ALJ erred in failing to find that Plaintiff's skin disorders and anxiety were not severe impairments; (2) that the ALJ erred in finding that Plaintiff's epilepsy did not meet the requirements of the applicable listings of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings); and that the ALJ erred in determining that

---

[5]"Substantial evidence means more than a scintilla, less than a preponderance, and is

> `such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."'

*Id.* (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

6

Plaintiff could return to her past relevant work.

The undersigned concludes that there is no basis for this court to reverse or remand based upon Plaintiff's first argument. A finding that an impairment is not severe is appropriate if the impairment can be considered "a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). The record contains no evidence that Plaintiff has suffered any ongoing problems from a skin condition that would limit in any manner her ability to work.[6] As to Plaintiff's anxiety, the Dr. Parker's notes indicates that Plaintiff complained of anxiety during a time in which she and her husband were separated, and that Dr. Parker prescribed Klonopin, which she has continued to take. However, the record is devoid of evidence that anxiety has limited her functioning in any way, and her testimony was consistent with a finding that her anxiety is not a severe impairment. The undersigned concludes that the ALJ's findings as to the non-severity of these impairments is supported by substantial evidence.

Plaintiff also argues that the ALJ erred by failing to find that Plaintiff's seizure disorder met or equaled the requirements of either Listing 11.02 or Listing 11.03. The Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1, "describe, for each of the major body systems, impairments which are considered severe enough to prevent a person from

---

[6]Plaintiff's memoranda of authorities contain additional details and allegations concerning her history and treatment for her skin condition and its resulting functional limitations. However, these "facts' are not based upon any evidence in the administrative record.

7

doing any gainful activity. " 20 C.F.R. § 404.1525(a). An impairment which meets each of the requirements of an applicable Listing and is expected to last at least twelve months (or result in death) is *per se* disabling. Listing 11.02, as in effect at the time of Plaintiff's hearing, described convulsive epilepsy as follows:

> 11.02 Epilepsy - convulsive epilepsy (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least 3 months of treatment.  With:
>
>> A.  Daytime episodes (loss of consciousness and convulsive seizures) or
>>
>> B.  Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.02 (2003).

Listing 11.03 described nonconvulsive epilepsy as follows:

> 11.03 Epilepsy - nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently that once weekly in spite of at least 3 months of prescribed treatment.  With alternation of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.03 (2003)

The undersigned concludes that the ALJ's finding that neither listing was met is supported by substantial evidence.  Plaintiff's medical records do not indicate that Plaintiff's grand mal seizures occurred more frequently than once a month (as required for Listing 11.02) or that her petit mal seizures occurred more frequently that once a week (as required for Listing 11.03).  Dr. Parker's treatment notes document the following seizures, as reported to him by Plaintiff at her office visits or, as in one instance, by a

8

phone conversation with him:

| | |
|---|---|
| September 21, 2000: | No complex partial/generalized motor convulsive seizures in "quite some time." |
| October 26, 2000: | Has had no seizures. |
| December 8, 2000: | In the process of changing from Tegretol to Lamictal. |
| May 14, 2001: | One seizure, predominantly partial, since last visit. |
| July 24, 2001: | Frequent small seizures cause by TV and computer screen flickering. |
| December 20, 2001: | "Less frequent seizures." |
| January 3, 2002: | (Per telephone conference with patient).  One generalized seizure.  Will switch back from Lamictal to Tegretol XR. |
| February 26, 2002: | Three small seizures and one generalized seizure during the preceding week. |
| April 23, 2002: | One grand mal seizure six weeks prior; Intermittent small seizures." |
| October 22, 2002: | No seizures since last visit. |
| April 22, 2003: | Two generalized seizures since March, 2003.  Increased migraines. |

This medical evidence does not indicate that the frequency of Plaintiff's seizures was sufficient to meet the requirements of either listing.

Plaintiff also argues that controlling weight should have been afforded to Dr. Parker's letter of October 31, 2003.  This letter, which was submitted one day after the ALJ had made his decision, states in pertinent part as follows:

> [Plaintiff's] seizures are generalized tonic-clonic - generalized convulsive epilepsy most of the time.  She does have some psychomotor seizures, partial seizures

9

> where she will stare into space and lose track of time and be able to continue activities. These generalized tonic-clonic seizures can last for minutes and then be followed by a postictal confusional state that can last up to a day.
>
> She has had at least one generalized or psychomotor seizure a month in spite of years of treatment with Tegretol.
>
> Under the category of impairments [the Listings] neurologically she fits under category 11.02.

This letter was not before the ALJ. However, Plaintiff submitted it to the Appeals Council. Even so, the Appeals Council was not required to accept Dr. Parker's opinion on this point. The opinion of a treating physician as to the nature and severity of a patient's impairments is entitled to controlling weight *if* it is well-supported by acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, a treating physician's opinion may be given lesser weight for good cause, such as where it is conclusory or unsupported by objective medical evidence. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Dr. Parker's own treatment notes do not support his statement as to the frequency of Plaintiff's seizures.[7]

Plaintiff also argues, in support of this same argument, that the ALJ erred in rejecting Plaintiff's testimony concerning the frequency of her seizures. To the contrary, the ALJ properly evaluated Plaintiff's testimony in light of the factors set forth in 20 C.F.R

---

[7]Neither was the ALJ compelled to accept Dr. Parker's opinion, set forth in this letter of April 23, 2002, that Plaintiff was disabled and unemployable. Under the disability regulations, the ultimate issue of disability is reserved to the Commissioner. The ALJ properly exercised his discretion to afford greater weight to Dr. Parker's treatment notes than to Dr. Parker's unsupported opinion as to Plaintiff's disability. *See Brown v. Apfel,* 792 F.3d 492, 496 (5th Cir. 1999).

10

§ 404.1529(c).  Furthermore, Plaintiff's testimony was not supported by her own reports to Dr. Parker.

In sum, the undersigned concludes that the ALJ's determination that Plaintiff's seizure order did not meet the Listing requirements is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ's finding that Plaintiff could return to her past relevant work was not supported by substantial evidence.  Specifically, she maintains that the ALJ erred in finding that she had no exertional limitations on her ability to perform work-related activities.  This was the finding set forth in the residual functional capacity assessment of Dr. Glenn James, the state agency physician who made the initial determination of Plaintiff's application, and Plaintiff has failed to point to any evidence in the record to the contrary.  Moreover, all of the jobs identified by the vocational expert as jobs Plaintiff could perform are classified at the sedentary level.  This argument is without merit.

## IV. <u>Conclusion</u>

For these reasons, the undersigned recommends that Plaintiff's motion be denied and the decision of the Commissioner affirmed.  The parties are hereby notified that failure to file written objections to the findings and recommendations contained in this report by February 21, 2007, will bar an aggrieved party, except upon grounds of plain

error, from attacking on appeal proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; *Douglass v. United Service Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

    Respectfully submitted, this the 7th day of February, 2007.

                                /s/ James C. Sumner
                                UNITED STATES MAGISTRATE JUDGE